OPINION
{¶ 1} Barry Robertson appeals from the trial court's decision and judgment entry sustaining the State's motion for permanent custody of his two minor children, H.E.R. and J.A.R.
 {¶ 2} In his sole assignment of error, Mr. Robertson contends the trial court should have overruled the motion. In particular, he claims the trial court acted prematurely in terminating his parental rights, and he argues that the custody decision is not in the best interest of his children.
 {¶ 3} Upon review, we conclude that the trial court did not err in sustaining the State's motion. The record persuades us that the State made reasonable but unsuccessful efforts to reunify Mr. Robertson and the children for well over a year. The record also supports a finding that an award of permanent custody to the State is in the best interest of the children. Accordingly, we will affirm the judgment of the Darke County Common Pleas Court, Juvenile Division.
 I. {¶ 4} The State filed a complaint in April, 2001, alleging that H.E.R. and J.A.R. were neglected children based on the deplorable condition of their home. Mr. Robertson and his former wife, Susan Robertson, admitted the allegations. The trial court adjudicated the children neglected and entered a dispositional order allowing them to remain in the custody of their parents under protective supervision.
 {¶ 5} The Robertsons subsequently were found in contempt for failing to comply with prior court-ordered requirements, and the children were placed in temporary custody of the State in September, 2001. The children lived in a foster home until the trial court awarded temporary custody to their maternal uncle, Doug Bidwell, in October, 2002, after finding that the Robertsons, who had separated, were not in substantial compliance with prior orders and case plans. Thereafter, in January, 2003, Bidwell informed the trial court that he could not care for the children. As a result, they returned to the temporary custody of the State, which again placed them in foster care.
 {¶ 6} In March, 2003, the State moved for permanent custody, arguing that the Robertsons still had not achieved substantial compliance with court-ordered conditions and the requirements imposed by reunification plans. The State also noted that the children had been in the custody of Children Services for well over a year. In addition, it argued that adoption was available for the children, that placement with other relatives was not feasible, and that reunification with the Robertsons within a reasonable time was impossible due to the parents' failure to satisfy the obligations imposed on them.
 {¶ 7} Following a hearing, the trial court filed a thorough September 2, 2003, decision and judgment entry in which it granted the State permanent custody of H.E.R. and J.A.R. Mr. Robertson then filed this timely appeal. Susan Robertson has not appealed from the trial court's ruling.
 II. {¶ 8} In his sole assignment of error, Mr. Robertson contends the trial court erred in sustaining the State's motion. In support, he first argues that the State failed to prove the existence of reasonable efforts to return the children to him in accordance with R.C. § 2151.419(A)(1). Upon review, we find this argument unpersuasive.
 {¶ 9} With an exception not applicable here, R.C. §2151.419(A)(1) provides that "at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section2151.314 [2151.31.4], 2151.33, or 2151.353 [2151.35.3] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return home safely."
 {¶ 10} Although it is questionable whether the "reasonable efforts" requirement of R.C. § 2151.419(A)(1) even applies in this case,[1] we need not dwell on that issue because the trial court's findings clearly and convincingly establish that the State made more than reasonable efforts to reunite Mr. Robertson with his children. The record reflects that the children were placed in the temporary custody of the State effective September 26, 2001, after protective supervision failed and the Robertsons were found in contempt for failing to comply with requirements imposed on them by court orders and their case plan. In its contempt ruling, the trial court found that reasonable efforts to prevent removal of the children from the home had failed. The trial court also noted that the Robertsons had failed to maintain a clean and safe home and had failed to resolve a chronic head-lice problem.
 {¶ 11} The trial court held a review hearing on December 31, 2001. Thereafter, it filed an entry finding a need to continue temporary custody because the Robertsons had not adequately complied with the requirements imposed on them. The trial court conducted another review hearing on April 2, 2002. In an entry filed after that hearing, the trial court noted that the Robertsons had separated, and it once again found continued temporary custody necessary because they had not yet demonstrated an ability to care for the children. The trial court filed a similar order after a review hearing held on June 17, 2002. Following yet another review hearing held on August 14, 2002, the trial court noted the State's warning that unless the Robertsons began complying with all orders and the case plan, a motion for permanent custody would be filed.
 {¶ 12} Thereafter, on October 7, 2002, the children were placed in the legal custody of their maternal uncle, Doug Bidwell, because the Robertsons still had not substantially complied with court orders and the case plan. After Bidwell indicated that he could not care for the children, the trial court returned them to the custody of the State following a review hearing held on January 29, 2003. The trial court also reimposed its prior requirements on Mr. Robertson, including, inter alia, maintaining full-time employment, participating in an anger-management program, attending counseling, taking his medications, maintaining a clean and safe home, remaining free of lice, disposing of numerous inoperable vehicles, paying child support, and attending budgeting classes. In addition, the trial court again warned that the State had expressed its intent to move for permanent custody in the near future.
 {¶ 13} The State filed its permanent custody motion on March 31, 2003. Therein, the State argued that the Robertsons still had not substantially complied with applicable court orders or the case plan. With regard to Mr. Robertson, the State alleged, among other things, that he had failed to attend an anger-management program, required counseling sessions, or budgeting classes. The State also alleged that he had failed to maintain a clean and safe home, had failed to dispose of all inoperable cars, and had failed to make regular support payments.
 {¶ 14} After holding a hearing on the State's motion, the trial court found that Mr. Robertson had been convicted of three felony domestic violence charges in January 2003. The trial court also found that he never attended any anger-management classes and that he did not complete court-ordered psychological counseling sessions. In addition, the trial court found that Mr. Robertson had failed to complete his budgeting classes or a required successful-parenting education program. The trial court also found that he had made at best sporadic support payments and no payments at all since October 15, 2002. The trial court then found that Mr. Robertson was unemployed, that he lacked suitable housing for the children, and that he relied solely on his parents to meet his needs. As a result, the trial court concluded that Mr. Robertson had not substantially complied with its orders and the case plan, and it determined that he had failed to remedy the problems that led to the children being removed from his home. Finally, the trial court noted that Mr. Robertson's sister, Sherry Burk, once mentioned as a potential custodial care-giver for the children, no longer wished to be considered.[2]
 {¶ 15} Having reviewed a transcript of the trial court's permanent custody hearing and its detailed decision in this matter, we find absolutely no merit in Mr. Robertson's argument that the State failed to make reasonable efforts to reunite him with his children. H.E.R. and J.A.R. were removed from his home well over a year before the State moved for permanent custody. During that time, Mr. Robertson appears to have done little to meet the requirements imposed on him by the court and the case plan. In addition, possible placement with relatives had been explored and exhausted. Thus, the State plainly made reasonable but unsuccessful efforts to return the children to Mr. Robertson.
 {¶ 16} In a related argument, Mr. Robertson asserts, albeit without elaboration, that the record fails to establish the State's inability to return the children to him in a reasonable time. We reject this argument for essentially the same reasons that we were unpersuaded by his "reasonable efforts" claim above. The State initially removed the children from Mr. Robertson's home in September, 2001. From that time until March 31, 2003, when the State sought permanent custody, Mr. Robertson appears to have made very little progress in obtaining the return of his children. At the time of the permanent custody hearing, Mr. Robertson had not complied with many of counseling-related and other requirements imposed upon him, he had been convicted on three felony counts of domestic violence, he had been unemployed for at least six months, he still relied on his parents for support, and he was residing in a one-bedroom house that his parents were preparing to sell. When discussing where he would live after the sale, he responded candidly that his mother would "have to fork over some money" for a deposit on an apartment. In short, the record in this case firmly convinces us that H.E.R. and J.A.R. could not be returned to Mr. Robertson within a reasonable time.[3]
 {¶ 17} Mr. Robertson next argues at length that he has a fundamental right to have custody of his children. Although we do not deny the general proposition that such a right exists, a parent's right to custody may be terminated if a court finds, by clear and convincing evidence, (1) that "it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody" and (2) that "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period[.]" R.C. § 2151.414(B)(1).
 {¶ 18} In the present case, Mr. Robertson does not dispute that the second requirement has been met. The only remaining issue, then, is whether a grant of permanent custody to the State is in the best interest of H.E.R. and J.A.R. In its detailed opinion, the trial court appears to have found termination of parental rights to be in the best interest of the children for a number of reasons. First, they had been in relatively long-term temporary custody of the State. Second, they were in need of a secure, permanent placement that could not be achieved without a grant of permanent custody to the State. Third, the children, who were five years old and "very adoptable" at the time of the hearing, were in a foster home where adoption could be expedited. Fourth, placement with a relative had failed. Fifth, reunification with either of the Robertsons was not possible because of their continued failure to substantially comply with the case plan or orders of the court. Sixth, the Robertsons had demonstrated a lack of commitment toward the children. The foregoing findings, which are supported by the record, are sufficient to satisfy the requirements of R.C. § 2151.414. Thus, we find no error in the trial court's determination, by clear and convincing evidence, that it is in the best interest of H.E.R. and J.A.R. to grant permanent custody to the State. Accordingly, we overrule Mr. Robertson's assignment of error.
 III. {¶ 19} Having overruled the appellant's sole assignment of error, we affirm the judgment of the Darke County Common Pleas Court, Juvenile Division.
Fain, P.J. and Young, J., concur.
[1] By its own terms, R.C. § 2151.419(A)(1) applies to "any hearing held pursuant to section 2151.28, division (E) of section2151.31, or section 2151.314 [2151.31.4], 2151.33, or 2151.353
[2151.35.3] of the Revised Code." In the present case, the State moved for permanent custody under R.C. § 2151.413, and the trial court held a hearing pursuant to R.C. § 2151.414, which is not one of the statutory sections referenced in R.C. §2151.419(A)(1), upon which Robertson relies. As a result, some courts have held that the R.C. § 2151.419(A)(1) "reasonable efforts" requirement is not applicable when the State moves for permanent custody under R.C. § 2151.413. See, e.g., In re Moore
(Dec. 15, 1999), Summit App. No. 19217; In re Evans, Allen App. No. 1-01-75, 2001-Ohio-2302.
[2] The trial court also recited a number of problems related to Susan Robertson and her unsuitability to regain custody of the children. Given that she has not appealed from the trial court's permanent custody order, we need not recite the trial court's findings as to her.
[3] On appeal, Mr. Robertson suggests that he made an attempt to go to every class ordered by the court and even lost his job because the classes prevented him from going to work. The record does not support these assertions. Mr. Robertson expressly denied that he was fired for missing work. (Hearing transcript at 306). The record also reflects that Mr. Robertson missed numerous scheduled appointments, often without calling. By his own admission, Mr. Robertson tended to "forget" about the appointments, and he even forgot about some of the weekly visits with his children because he "didn't realize what day it was." (Id. at 294, 297).